UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MEIDELYN SALAMAN DIAZ,

               Plaintiff,

     -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

               Defendant.

_____

**DECISION AND ORDER**
**No. 13-CV-6641(MAT)**

## INTRODUCTION

*Pro se* Plaintiff, Meidelyn Salaman Diaz ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for supplemental security income ("SSI"). Presently before the Court is Defendant's unopposed motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

On November 22, 2010, Plaintiff filed an application for SSI, alleging disability as of January 1, 1994 due to depression and vision problems. Her application was denied on May 5, 2011. Administrative Transcript [T.] 71. At Plaintiff's request, a hearing was held on April 17, 2012, via videoconference, before administrative law judge ("ALJ") John P. Costello, at which Plaintiff and a vocational expert ("VE") testified. T. 38-59, 97-

106.   On May 21, 2012, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period.  T. 13-20.

On September 27, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-5.  This action followed.

## FACTUAL BACKGROUND

Plaintiff, who was age 25 at the time of the hearing, testified that she did not understand English and preferred Spanish.  At the hearing, the ALJ noted that a Spanish interpreter was present and that Plaintiff was *pro se* as her representative had withdrawn.  T. 40-41.  Although the ALJ offered to adjourn the hearing in order for her to obtain representation, Plaintiff elected to proceed with the hearing and executed a waiver of representation.  T. 155, 55.

Plaintiff testified that she was single, lived with her two children, and had never worked.  T. 45-46.  She testified that she was born in Puerto Rico, moved to the continental United States, and attended school through the ninth grade.  T. 46.

According to Plaintiff, she was unable to work due to depression, anxiety, and a vision problem.  T. 47, 50, 52, 54.

**Relevant Medical Evidence Prior to the Application Filing Date**

Prior to November 22, 2010, Plaintiff was seen at Unity Family Medicine at Orchard Street ("UFM") and Strong Memorial Hospital for depression, abdominal pain (related to gallstones), and a deviated nasal septum.  T. 213-232.  She was also seen at Unity Hospital

Outpatient Mental Health Clinic ("UMH"), complaining of anxiety, stress, and difficulty sleeping.  T. 258-261.  In March 2009, Plaintiff was diagnosed with depressive disorder and assessed a Global Assessment Functioning ("GAF") score of 65.  T. 257.

In May 2009, Plaintiff underwent a psychiatric examination at St. Mary's Mental Health Outpatient Clinic ("St. Mary's). Treatment notes show Plaintiff's mental health "problem list" included anxiety, behavioral problems, depressed mood and psychosis.  She was treated with Paxil and Trazadone medications. T. 275.

In July 2009, Plaintiff underwent a consultative examination by psychologist Margaret Baittle, Ph.D., who diagnosed Plaintiff with depressive disorder, panic disorder with agoraphobia, and mild mental retardation with a full scale IQ of 65.  T. 392.

In August 2009, opthalmologist Ralph S. Viola, M.D. performed an examination of Plaintiff and assessed that her corrected left eye vision was 20/40 and the right eye had low vision.  Dr. Viola assessed that Plaintiff's left eye had full visual fields and the right did not.  Dr. Viola also reported that there was evidence of keratoconus with steepening and scarring in both eyes, but more so in the right eye.  T. 394.

In November 2010, Plaintiff was seen at UMH by Kathy Calnan, NPP ("Calnan"), at which time Plaintiff reported feeling increased anxiety due to her daughter's upcoming liver transplant.  Calnan conducted an mental exam of Plaintiff and reported that her

thoughts were logical and coherent, her mood was congruent, her insight was superficial, she was fully oriented and alert, she had no apparent cognitive deficit, and her judgment was good.  T. 279.

**Relevant Medical Evidence from November 22, 2010 to May 21, 2012**

In April 2011, psychologist Christina Caldwell, Ph.D. performed a consultative examination of Plaintiff and assessed that Plaintiff: was able to follow and perform simple directions and instructions and perform simple tasks independently; was able to maintain attention and concentration; was unable to relate adequately with others and deal with stress; and was limited in her ability to maintain a schedule, learn new tasks, make appropriate decision, and perform tasks independently.  Dr. Caldwell diagnosed depressive disorder, panic disorder with agoraphobia, and psychotic disorder.  T. 289-292.  Plaintiff's prognosis was assessed as "fair."  T. 292.

On April 19, 2011, Plaintiff was seen at UFM by Robin Baines, M.D., at which time she was diagnosed with depression and referred to UMH for care.  T. 327.

On April 21, 2011, Plaintiff met with Dr. Viola again, complaining of eye glare, blurry vision, an itchy right eye, and mild headaches.  T. 293.  Dr. Viola examined Plaintiff and reported that Plaintiff's best corrected vision in her left eye was 20/60.  T. 293.  Dr. Viola noted that there was evidence of keratoconus with steepening and scarring more so on the right eye than the left

-4-

eye. Dr. Viola noted that Plaintiff was able to navigate around his office without difficulty. T. 294. On April 27, 2011, State Agency physician Ronald Gauthier, M.D. reviewed the record and reported that Plaintiff's best corrected vision in her left eye was 20/60. Dr. Gauthier assessed that this restricted Plaintiff's functioning, but that some use of print media was still possible. He assessed that Plaintiff "has intact visual fields and can avoid all but concentrated hazards." T. 299.

In May 2011, State Agency psychologist R. Nobel reviewed the record and assessed that Plaintiff had depressive disorder and panic disorder. T. 302-317. Nobel opined that Plaintiff's activities of daily living were mildly impaired, her social functioning and maintaining concentration, persistence and pace were moderately impaired, and that she had one or two episodes of extended deterioration. T. 314. Nobel assessed that Plaintiff could perform work related tasks "in a setting requiring only superficial contact with others." T. 302. In May and June 2011, Plaintiff met with LMSW Joann Rodriguez ("Rodriguez") to re-start mental health treatment, as she had stopped same due to her daughter's poor health. T. 357-358, 363, 370. Plaintiff reported to Rodriguez that she felt depressed, had recently had panic attacks, and had problems sleeping. Plaintiff continued on Paxil and Trazodone. T. 357-358. Rodriguez reported that Plaintiff had an anxious mood, but was otherwise normal. T. 362-363, 371-372.

**DISCUSSION**

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir.1983) (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).  A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

When, as here, the Court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is sufficient basis for granting the motion.  <u>See</u> <u>Wellington v. Astrue</u>, No. 12 Civ. 03523(KBF), 2013 U.S. Dist. LEXIS 67883, 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (recognizing, in an action appealing the denial of disability benefits, a court's obligation to review the record before granting an unopposed motion for judgment on the pleadings).  "Although . . . failure to respond 'may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law.'" <u>McDowell v. Commissioner</u>, No. 08-CV-1783 (NGG), 2010 U.S. Dist. LEXIS 128114, 2010 WL 5026745, at *1 (E.D.N.Y. 2010) (quoting <u>Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004)). Additionally, "[p]ro se litigants 'are entitled to a liberal

construction of their pleadings,' and therefore their complaints 'should be read to raise the strongest arguments that they suggest.'" Emerson v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 41413, 2014 WL 1265918, at *9 (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)); see also Alvarez v. Barnhart, No. 03 Civ. 08471(RWS), 2005 U.S. Dist. LEXIS 472, 2005 WL 78591, at *1 (S.D.N.Y. Jan. 12, 2005) (describing liberal *pro se* standard in reviewing denial of disability benefits).

## II. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims. 20 C.F.R. § 404.1520. The ALJ in this case used this five-step sequential procedure to determine Plaintiff's eligibility for disability benefits. The ALJ found that: Plaintiff did not engage in substantial gainful activity since November 22, 2010, the application date; that Plaintiff had the severe impairments of anxiety, attention deficit hyperactivity disorder ("ADHD"), and poor vision in the right eye, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments; that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that she cannot perform work requiring intact near visual acuity, she can understand, remember and perform simple work, and

she can have occasional interaction with the general public and coworkers; that Plaintiff has no past relevant work; and that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager and cleaner.  T. 14-19.  Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period.  T. 19-20.

Because the ALJ's determinations at steps one and two do not negatively affect Plaintiff's application for benefits and because Defendant does not challenge these determinations, the Court will address the ALJ's determinations only as to steps three through five.  The Court finds, however, based on a review of the entire administrative record, that the ALJ's determinations at all steps are supported by substantial evidence.

### A.   Step 3: Listed Impairment

At step 3, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  T. 15.

The ALJ concluded that Plaintiff's mental impairments of anxiety and ADHD did not satisfy the paragraph B requirements under section 12.04 (affective disorders) or 12.06 (anxiety disorders). To satisfy paragraph B, Plaintiff's impairments had to result in two of the following: (1) marked restriction of activities of daily

living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.   20 C.F.R. Pt. 404, Subpt. P, App'x 1 at § 12.04(B).

First, the ALJ determined that Plaintiff's restrictions in activities of daily living were mild (T. 15) because Plaintiff was able to care for herself, her home, and her two young children, one of whom has serious medical concerns.   T. 53-54, 197-200, 291.

Next, the ALJ determined that Plaintiff's restrictions in social functioning were mild.   T. 15.   The ALJ acknowledged that while Plaintiff has problems relating to people in crowded or public situations, she still socializes with family and friends. T. 16, 291, 392.   Additionally, Dr. Caldwell reported that Plaintiff was cooperative with adequate social skills and manner of relating and was able to handle simple matters, although she was sometimes overwhelmed.   T. 291.

With respect to concentration, persistence or pace, the ALJ found that Plaintiff had moderate difficulties.   T. 16.   In making this finding, the ALJ acknowledged that Plaintiff has some cognitive deficits.   However, he also noted that Plaintiff is able to understand, remember and carry out simple instructions independently.   T. 16.   Specifically, Dr. Caldwell assessed that Plaintiff was able to maintain attention and concentration, follow and perform simple directions and instructions and perform simple

tasks independently.  T. 392.  Likewise, Dr. Baitle opined that Plaintiff was able to follow and perform simple directions and tasks.  T. 358.

The ALJ then determined that Plaintiff had experienced no episodes of decompensation which have been of extended duration. T. 16.  Although the evidence in the record shows that Plaintiff reported having been hospitalized in 1998 for a mental condition, subsequent treatment records show that Plaintiff never received in-patient psychiatric treatment.  Further, Plaintiff's treatment records show overall that her mental health conditions were conservatively managed with outpatient therapy treatments with a social worker and minimal medication.  T. 277, 280, 284-287, 289, 357-358, 363.

Because Plaintiff's mental impairments did not result in more than two areas of marked restriction or one area of marked restriction and repeated episodes of decompensation, Plaintiff did not satisfy the Paragraph "B" criteria.

The ALJ also considered whether the paragraph C criteria of listings 12.04 and 12.06 were met.  Paragraph C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration . . . and one of the following: (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an

> indication of continued need for such an
> arrangement.

20 C.F.R. Part 404, Subpt. P, App'x 1 at §§ 12.04(C), 12.06(C). The ALJ noted that Plaintiff does not experience episodes of deterioriation and does not need to be in a highly supportive environment to avoid such episodes.  T. 16.  As discussed above, this finding is supported by the evidence that, during the relevant period, Plaintiff's mental health condition was generally stable, she received conservative mental health treatment, and was never hospitalized.  It is also supported by the evidence that Plaintiff lived alone, cared for herself and her two young children, and socialized, to some extent, with family and friends.  Therefore, the Paragraph C criteria were not met.  Having failed to satisfy the Paragraph B or Paragraph C criteria, the ALJ concluded that Plaintiff did not have a listing-level impairment.

With respect to Plaintiff's vision problems, the ALJ did not expressly consider Listing 2.00 (Special Senses), which includes visual impairments.  Nonetheless, any error in failing to do so was harmless given that the ALJ's conclusion that Plaintiff did not have a Listed Impairment is supported by substantial evidence. Specifically, under the Regulations, sections 2.02 - 2.04 of Listing 2.00 outline the conditions required to establish a visual impairment.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 2.02-2.04.  To constitute a Listed Impairment, Plaintiff must suffer from a "[l]oss of central visual acuity," characterized by "[r]emaining vision in the better eye after best correction [being] 20/200 or

-12-

less." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 2.02.  Impairment can also arise from "[c]ontraction of the visual field in the better eye." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 2.03.  Last, impairment can arise from "[l]oss of visual efficiency, or visual impairment, in the better eye."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 2.04.  Plaintiff's vision problem does not satisfy these requirements given that the evidence in the record shows that Plaintiff's best corrected vision in the left eye was either 20/40 or 20/60 and that she retained full visual fields in her left eye. T. 293, 294, 299, 294, 381.

Accordingly, the Court finds that the ALJ's step 3 determination is proper as a matter of law and is supported by substantial evidence.

**(B)  Step 4: RFC**

**1.  The ALJ's RFC Assessment**

The ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitation: she cannot perform work requiring intact near visual acuity.  She can understand, remember and perform simple work.  She can have occasional interaction with the general public and coworkers."  T. 16.

Initially, the ALJ determined that Plaintiff had no exertional limitations and could perform all levels of work because there was no evidence in the record that Plaintiff suffered from any physical impairment, except for her vision problem.  Specifically, the

clinical physical examination findings from before and after the relevant time period were either mild or entirely unremarkable. T. 235-236, 337-339. Additionally, in her disability application, Plaintiff denied any significant physical problems or functional limitations, except that she required eyeglasses. T. 201-202.

With respect to Plaintiff's non-exertional limitations, the ALJ found that Plaintiff was limited to work that did not require intact near visual acuity. T. 16. This finding was supported by the treatment notes of opthamologist Dr. Viola and the opinion of State Agency physician Dr. Gauthier. Specifically, Dr. Viola reported in August 2009 that Plaintiff's best-corrected vision in her left eye was 20/40 and her right eye had "severely decreased vision." T. 18, 394. Dr. Viola diagnosed keratoconus in the right eye, but noted that Plaintiff navigated around the office without apparent problem. T. 18, 394. In April 2011, Dr. Viola examined Plaintiff again and reported that Plaintiff's best-corrected vision in her left eye was 20/60. T. 293, 294. He also reported that Plaintiff's visual field was full to confrontation in her left eye, but not her right. T. 294. He noted Plaintiff's "long history of keratoconus which is worse in the right eye and most likely the cause of her decreased vision." T. 294. Again, he noted that Plaintiff was "seen navigating about the office without difficulty." T. 294. Moreover, State Agency physician Dr. Gauthier reviewed the evidence in the record in April 2011 and noted that Plaintiff's best-corrected vision was 20/60. T. 299.

He assessed that Plaintiff's vision problem was a "severe impairment" that "will not allow frequent use of fi[n]e vision" but that "[s]ome use of print media is still possible." T. 299. Indeed, the opinion of a non-examining source, such as a state agency physician, can constitute substantial evidence in support of an ALJ's determination where, as here, it is consistent with the record as a whole. See Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (same).

With respect to Plaintiff's mental limitations, the ALJ determined that Plaintiff "can understand, remember and perform simple work [and] she can have occasional interaction with the general public and coworkers." T. 16. The ALJ's finding was supported by the objective evidence in the record, as well as the opinions of consultative physicians Dr. Baittle and Dr. Caldwell, and State Agency psychological consultant Nobel. See generally Diaz, 59 F.3d 307, 315 (2d Cir. 1995) (opinions of consultative and State Agency physicians can constitute substantial evidence); Mongeur, 722 F.2d at 1039 (2d Cir. 1983) (same).

Specifically, Plaintiff was treated for depression at St. Mary's since 2009. T. 17. However, as the ALJ noted, there

was no evidence in the record that Plaintiff had been considered unable to work at any point in her mental health treatment history. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (the ALJ "is entitled to rely not only on what the record says, but also on what it does not say.").

Further, Dr. Baittle performed a consultative psychiatric examination of Plaintiff in July 2009. Dr. Baittle noted that Plaintiff reported problems with sleeping, depression, loss of interest and low self-esteem, fatigue, memory and concentration problems, and panic attacks. T. 390-391. Dr. Baittle noted that Plaintiff was taking medication for panic attacks and that this medication helped to some extent. T. 391. Dr. Baittle reported that Plaintiff: had good orientation and clear sensorium; was able to follow and perform simple directions and perform simple tasks; that she was not always able to maintain attention and concentration; and that she had difficulty learning new tasks and making appropriate decisions. Dr. Baittle reported that Plaintiff did not relate "too well" with others or deal appropriately with stress. T. 392.

Likewise, consultative examiner Dr. Caldwell performed a mental status examination of Plaintiff in April 2011 and reported that Plaintiff was cooperative with adequate social skills and manner of relating. T. 290. Dr. Caldwell reported that: Plaintiff's thought processes were coherent and goal-directed; there was no evidence of delusions, hallucinations, or paranoia;

and that her affect was full and her mood was neutral. Additionally, Dr. Caldwell reported that Plaintiff was fully oriented with clear sensorium, her attention and concentration were intact, cognitive functioning was average to below average, and her insight and judgment were fair. Dr. Caldwell opined that Plaintiff was able to follow and perform simple directions and instructions and perform simple tasks independently, although she was unable to relate adequately with others and deal with stress. Dr. Caldwell opined that Plaintiff was limited in her ability to maintain a schedule, learn new tasks, make appropriate decisions, and perform complex tasks independently. T. 291.

Finally, State Agency psychological consultant Nobel reviewed the evidence in the record in May 2011 and reported that Plaintiff had "moderate limitations" with respect to her social functioning and maintaining concentration, persistence or pace, and that she had "mild limitations" with respect to activities of daily living. He opined that while Plaintiff had a severe impairment, she could still perform work-related tasks in a setting that required only "superficial contact" with others. T. 302, 314.

Accordingly, the Court finds that the ALJ's RFC finding was proper as a matter of law and supported by substantial evidence.

## 2. The ALJ's Credibility Assessment

Additionally, the ALJ properly assessed Plaintiff's credibility in determining her RFC. The ALJ noted that Plaintiff

"alleges depression, anxiety, and a vision problem that prevent her from working." T. 17. According to Social Security Administration Regulations, an individual's subjective complaints alone should not be conclusive evidence of disability. 20 C.F.R. § 416.929(b). If a claimant alleges symptoms of greater severity than established by the objective medical findings, the ALJ will consider other evidence, including factors such as the claimant's daily activities, the nature, extent, and duration of her symptoms, precipitating and aggravating factors, and the treatment provided. 20 C.F.R. § 416.929(c)(3).

A credibility finding by an ALJ is entitled to deference by a reviewing court and will be set aside only if it is not set forth "with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ followed the two-step process in considering in Plaintiff's allegations of disabling symptoms. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but her statements concerning the intensity, persistence, and limiting effects were not credible in light of the evidence in the record. T. 17.

While the ALJ used disapproved "boiler plate" language in rejecting Plaintiff's statements as incredible when he explicitly stated that "they are inconsistent with the above residual

functional capacity assessment," (see e.g., Cruz v. Colvin, 12 Civ. 7346 (PAC)(AJP), 2013 U.S. Dist. LEXIS 93312, 2013 WL 3333040, at *16 (S.D.N.Y. July 2, 2013) rep. and rec. adopted by 2014 U.S. Dist. LEXIS 23782, 2014 WL 774966 (S.D.N.Y. Feb. 21, 2014) ("The ALJ's conclusory reasoning is unfair to the claimant, whose subjective statements about his symptoms are discarded if they are not compatible with an RFC that has been predetermined based on other factors.")) the ALJ did not rely solely on this justification for his credibility findings. Rather, the ALJ explained the parts of the record that contradicted Plaintiff's assertions regarding the intensity and severity of her impairments. For example, the ALJ pointed out that while Plaintiff testified that "she experiences panic attacks that include a rapid heartbeat," she also testified that this happens when she does not take her medications. T. 17, 48. Additionally, the ALJ noted that when this does happen, she goes to her mother's home for assistance. T. 17, 48. The ALJ noted further that Plaintiff currently receives therapy for her mental health condition, and is also prescribed Paxil and Trazadone. T. 17. The ALJ noted further that while Plaintiff claims her mental health conditions prevent her from working, she also admits that some of her mental health problems are attributable to being a single mother of two children, one of whom has health issues. T. 17. Therefore, though the ALJ improperly stated that Plaintiff's testimony regarding her symptoms was not

credible because it was not consistent "with the above residual capacity assessment," (T. 17) his further analysis regarding the rest of the medical evidence and other statements made by Plaintiff are sufficient to satisfy SSR 96-7p, 1996 SSR LEXIS 4's requirement that the ALJ carefully consider the rest of the record when making a credibility determination. See e.g., Marquez v. Colvin, 12 Civ. 6819 (PKC), 2013 U.S. Dist. LEXIS 146221, 2013 WL 5568718, at *15 (S.D.N.Y. Oct. 9, 2013) ("[T]he ALJ did not merely point to the conclusions of his own RFC assessment to support his credibility determination. Rather, he stated his conclusion after an exhaustive review of plaintiff's medical records and testimony.").

Accordingly, the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence.

### (C) Step 5: Work that Exists in Significant Numbers in the National Economy

At step five, based on Plaintiff's RFC, age, education, and work experience, the ALJ found that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform, namely hand packager and cleaner. T. 19.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable [M]edical [V]ocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir.) (citation and internal quotation marks omitted). Those guidelines take into account "the claimant's residual functional

capacity in conjunction with the claimant's age, education, and skill level." Id. (citation and internal quotation marks omitted). If, however, a claimant has non-exertional limitations that "significantly limit the range of work permitted by his exertional limitations then the [G]rids obviously will not accurately determine disability status . . . ." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986) (citation and internal quotation marks omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" Rosa, 168 F.3d at 78 (quoting Bapp, 802 F.2d at 603). A "significant" non-exertional limitation is one that results in "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 606.

Here, the ALJ found that Plaintiff's ability to perform work had been compromised by non-exertional limitations (see RFC discussion above). T. 19. To determine the extent to which said limitations eroded the occupational base of work at all exertional levels, the ALJ relied on the testimony of a VE to determine Plaintiff's ability to perform work. T. 19.

An ALJ is entitled to rely on a VE's testimony when, as here, the ALJ's hypothetical is based on substantial evidence. See

McAninch v. Astrue, No. 09-CV-0969(MAT), 2011 U.S. Dist. LEXIS 116236, 2011 WL 4744411, at *21 (W.D.N.Y. Oct. 6, 2011) ("[T]he use of hypothetical questions to develop the VE's testimony is permitted, provided that the question incorporates the full extent of a plaintiff's physical and mental limitations.") (citing Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." Decker v. Astrue, 11 Civ. 5593 (PGG)(GWG), 2013 U.S. Dist. LEXIS 56814, 2013 WL 1694665, at *12 (S.D.N.Y. Apr. 19, 2013) [*57] rep. and rec. adopted by 2013 U.S. Dist. LEXIS 128363, 2013 WL 4804197 (S.D.N.Y. Sept. 9, 2013) (citation and quotation marks omitted).

At the hearing, the ALJ introduced to the VE the following potential limitations affecting Plaintiff: she cannot do work requiring intact near visual acuity; she is limited to simple tasks; she is limited to interaction on an occasional basis with co-workers and the general public.  When considering these limitations, the VE identified two jobs (hand packager and cleaner) available in significant numbers in the national and regional economies that Plaintiff could perform.  T. 19, 56-57.

While the VE testified that being "off task" twenty percent of the time would prohibit an individual from performing any work in the economy (T. 57), the ALJ did not include this restriction in Plaintiff's RFC.  Given the ALJ's reliance on the testimony of a VE

-22-

and the use of the same limitations described in the RFC, the ALJ's determination at step five is proper as a matter of law and is supported by substantial evidence.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings is granted (Dkt. No. 10), and the Complaint (Dkt. No. 1) is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     June 27, 2014
           Rochester, New York